**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**In re:**
                 **CASE NO. 09-22062**
**2670 WEST RIDGE ROAD LLC,**

         **Debtor.**  **DECISION & ORDER**
_____

**Decision & Order on Motion for Stay Pending the
Appeal of the Court's December 17, 2009 Order
Terminating the Automatic Stay in favor of Real
Estate Asset Purchase Corporation**

### BACKGROUND

On August 5, 2009, 2670 West Ridge Road, LLC (the "Debtor") filed a petition initiating a Chapter 11 case in order to stay an August 6, 2009 mortgage foreclosure sale of the commercial property it owns at 2670 West Ridge Road (the "Property"). The sale was scheduled in a state court foreclosure action (the "State Court Action"), commenced by Real Estate Asset Purchase Corporation (the "Lender"), and was being conducted pursuant to a June 23, 2009 judgment of foreclosure in the State Court Action, which determined that, as of that date, the Debtor owed the Lender $3,075,901.61 (the "Foreclosure Judgment").

On October 16, 2009, the Lender filed a Motion for Relief from the Automatic Stay to be allowed to continue its foreclosure proceeding in the State Court Action (the "Stay Motion"). The Stay Motion was heard on October 28, 2009, at which time it was placed on the Court's Evidentiary Hearing Calendar for November 25, 2009,

when it became clear that the parties could not come to a resolution of the Stay Motion. On the November 25, 2009 Evidentiary Hearing Calendar, the Stay Motion was set down for an Evidentiary Hearing on December 14, 2009 at 9:30 a.m. (the "Evidentiary Hearing").

At the Evidentiary Hearing on December 14, 2009, the parties agreed that: (1) in order to have the relief requested in the Stay Motion granted, the Lender was required to meet its burden under Section 362(d)(2)[1] to demonstrate that both: (a) the Debtor had no equity in the Property; and (b) the Property was not necessary for an effective reorganization; (2) the first prong had been met, because, even though the Debtor had an appraisal that indicated that the Property was worth $1,330,000.00, and the Lender had an appraisal that indicated that the Property was worth $1,200,000.00,

---

[1] Section 362(d)(2) provides that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362 (2010).

in either case the Debtor had no equity in the Property; and (3) at the present stage of the Debtor's reorganization process, where the Debtor had not yet filed a plan, even though its exclusive time to file a plan had expired, it was the Lender's burden under the second prong to demonstrate that any Chapter 11 plan that the Debtor could propose would be patently unconfirmable.

It was the position of the Lender, at the time it made the Stay Motion and at the Evidentiary Hearing, that the Debtor's current rent roll of $12,000.00 per month, could not fund any Chapter 11 plan that the Debtor could propose, because the Debtor did not have the means to implement the plan and could not demonstrate that the plan would be feasible, as required for the Court to confirm the plan under Section 1129(a).

At the Evidentiary Hearing, the Debtor indicated that: (1) it had entered into a lease of a portion of the Property the previous day with Sleep City, on a triple net basis, which would result in additional monthly rent of $5,000.00; (2) it had leased additional space in the basement of the Property to one of its existing tenants, Monroe Surgical, for an additional monthly rent of $3,000.00; (3) these two new leases would bring the Debtor's total monthly rent roll up to $20,000.00; (4) it believed that the amount due to the Lender under the Foreclosure Judgment could be reduced by a $412,639.23 prepayment premium that was included in the

Page 3

Foreclosure Judgment (the "Prepayment Premium"), in the event that the Debtor reorganized and repaid the amount due to the Lender, exclusive of the Prepayment Premium, with its contract rate of interest as part of a confirmed Chapter 11 plan; (5) it was prepared to file a plan that day that would propose to pay the Lender in full, without the Prepayment Premium, based on a twenty-year amortization, with a ten-year balloon, and with interest at the contract rate of 6.375%; (6) the Property only required a $5,000.00 annual reserve for maintenance and repairs; and (7) with the $20,000.00 monthly rent roll, anticipated maintenance expense, payments under the plan to other creditors, and with the Lender receiving the full amount of the Foreclosure Judgment, there would be an initial annual shortfall of approximately $47,600.00, after the further application and reduction of the amounts due on the Foreclosure Judgment by the amounts on hand with the state court receiver (the "Receiver") in the State Court Action, until 2012, when the rents would increase and the shortfall would decrease.

At the Evidentiary Hearing, the Debtor proposed to cover the approximately $4,000.00 per month initial shortfall by a promise from the Debtor's principal and 100% shareholder, Robert Fallone, Jr., DDS ("Dr. Fallone"), who was also a guarantor of the amounts due to the Lender to pay the monthly shortfall to the Debtor from the earnings of his dental practice.

Also, at the Evidentiary Hearing, the Debtor made a proffer that Dr. Fallone's net income was over $322,000.00 per year, as proof that Dr. Fallone could fund the shortfall. However, the Debtor did not indicate in its proffer that: (1) Dr. Fallone would provide any collateral or a bond in order to secure his mere promise to fund the shortfall; or (2) on a balance sheet basis, or otherwise, that Dr. Fallone had a positive net worth.

Additional information brought out at the Evidentiary Hearing included that: (1) the owner of Sleep City was Dr. Fallone's brother-in-law, and the lease that the Debtor had signed with Sleep City was dated February 2009, but only signed the day before the Evidentiary Hearing; (2) the Sleep City lease required a landlord build-out that was estimated to cost approximately $20,000.00, which the Debtor indicated that Dr. Fallone would also fund, since the Debtor did not have the funds to pay for the improvements; (3) there were continuing parking issues at the Property, including the removal of a barrier, which once again, the Debtor indicated that Dr. Fallone would fund; and (4) Sleep City could vacate the Property after the first year without penalty.

Also, at the Evidentiary Hearing, the Debtor indicated that it would sign a deed in lieu of foreclosure in favor of the Lender as part of any confirmed Chapter 11 plan, so that if the Debtor failed

**Page 5**

**BK. 09-22062**

to make the payments required under the plan, the Lender would be able to take control of the Property.

At the end of the Evidentiary Hearing, the Court granted the Stay Motion, for the reasons it set forth on the record, and an Order granting relief from the stay in favor of the Lender was entered on December 17, 2009 (the "Stay Order").

On December 28, 2009, before the time to appeal the Stay Order had expired, the Debtor made a Motion to Reconsider (the "Initial Motion to Reconsider"), which was heard on January 13, 2010, and denied by the Court. Thereafter, the Debtor filed a Notice of Appeal of the Stay Order on January 26, 2010.

On January 26, 2010, the Debtor also filed a Motion for a Stay Pending Appeal, or, in the alternative, for further reconsideration of the Stay Order (the "Appeal Motion"), which was heard by the Court on February 3, 2010, at which time it orally granted the requested stay and indicated that it would issue this Decision & Order.

### DISCUSSION

**A. The Stay Motion and the Initial Reconsideration Motion**

**1. The Stay Motion**

The Court granted the relief requested in the Stay Motion at the Evidentiary Hearing, for the following reasons:

**Page 6**

- (a) There was no dispute that the Debtor had no equity in the Property, which satisfied the first prong of Section 362(d)(2).

- (b) Although the Debtor might have been able to propose a different plan, the Debtor proffered a proposed plan at the Evidentiary Hearing that proposed to pay the Lender's claim in full, amortized with the contract annual interest rate of 6.375% over twenty years, but with a ten-year balloon, most likely because of its desire to avoid an absolute priority issue at confirmation.

- (c) The proposed payments under the proffered plan, including the payment to the Lender, resulted in a cash flow shortfall that the Court was required to assess for purposes of feasibility and the overall confirmability of the proffered plan.

- (d) The Debtor's own operations, even when the Property was fully rented with the existing tenants and Sleep City, would not cash flow sufficiently for the Debtor alone to implement its proffered plan, since on the Debtor's own calculations there was an approximately $4,000.00 per month initial shortfall if it had to repay the entire amount of the

Foreclosure Judgment. This shortfall was based upon a number of assumptions, which the Court accepted in order to afford the Debtor every benefit of the doubt regarding feasibility and confirmability, to wit: (i) the Sleep City lease was a valid and enforceable lease, and the tenant would lease its space beyond the one year initial term, even though it could terminate the lease without penalty after one year; (ii) there would be the credit against the Lender's debt that the Debtor computed, based upon a refund of a portion of the monies that the Receiver would have on hand at confirmation, less any awards made in the State Court Action; (iii) Dr. Fallone would fund the build-out of the Sleep City improvements, and would fund the necessary improvements to correct the parking issue, on a subordinated debt or equity infusion basis; (iv) there was only a $5,000.00 per year required maintenance and repair reserve requirement; (v) the requirement that the tenants pay their share of real estate taxes, insurance and common area charges would in fact cover all of those items, so that there would be no further

**Page 8**

        charge against the Debtor's anticipated $20,000.00 monthly rent roll; (vi) Monroe Surgical would in fact execute a lease for the additional basement space for an additional $3,000.00 monthly rent; and (vii) Dr. Fallone had clear economic interests in funding any improvements and the plan payment shortfalls.

(e)     The Debtor's proffer, that Dr. Fallone would pay the approximately $4,000.00 per month initial shortfall under the plan, did not include any assertion that Dr. Fallone would provide collateral or a bond as security for his promise to fund the shortfall, nor did the proffer include an assertion that Dr. Fallone had a positive net worth on a balance sheet basis or otherwise. Rather, Dr. Fallone's promise was simply an uncollateralized, unbonded promise to pay by an individual, whom the Court accepted, presently had a significant annual income.

(f)     The significant annual income of an individual, who promises to fund a shortfall under a corporate business reorganization plan, when the debtor cannot fund its own plan from its own business

**Page 9**

      operations, is not sufficient in this Court's opinion to demonstrate that such a plan is feasible and can be properly implemented, when a creditor with standing to object to feasibility, in fact objects.

      Indeed, to address the feasibility of the plan, the Court assesses the probability of the actual performance of the plan. In re Bergman, 585 F.2d 1171, 1179 (2nd Cir. 1978). In this regard: "[s]incerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises."

(g) The Court referenced the "hit by a bus" metaphor only to indicate that such a mere promise to pay by a third-party, who is currently a high income earner is speculative, when it is not collateralized or bonded. Also, unlike a wage earner in a Chapter 13 case, Dr. Fallone is not the debtor in this case. The entire Chapter 13 program is built around a wage earner's income and the promise to pay their disposable income to a trustee. On the other hand, a Chapter 11 corporate business debtor is expected to be able to fund its

        own plan, or at a minimum, fund a proposed shortall with a collateralized or bonded promise.

(h)    The Court, at the Evidentiary Hearing, could not accept the Debtor's assertion that it could have the amounts owed to the Lender reduced by the Prepayment Premium in the event that the Debtor had a plan confirmed that would pay the amount due the Lender in full with contract interest, because: (i) the Debtor never filed a timely appeal of the Foreclosure Judgment, so the Judgment was final and binding on this Court for purposes of the Stay Motion; and (ii) the Debtor never took any steps in the over four months since it had filed its petition to obtain any relief in the State Court Action, including attempting to obtain a declaratory judgment with regard to the Prepayment Premium. While this determination increased the initial monthly shortfall that would be required to be funded by Dr. Fallone, this was the state of the facts and circumstances at the date of the Evidentiary Hearing, and the Debtor was aware of these circumstances because the Court had indicated to the Debtor prior to the Evidentiary Hearing that

**Page 11**

>>the Court could not address the merits of the Prepayment Premium since the Foreclosure Judgment was final.

### 2. **The Initial Motion to Reconsider**

The Court denied the Debtor's Initial Motion for Reconsideration, because: (a) the Court determined that the Debtor did not establish any of the grounds required by Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") or Rule 9024 of the Federal Rules of Bankruptcy Procedure ("Rule 9024"); (b) the Court believed that its ruling on the Stay Motion at the Evidentiary Hearing was correct; and (c) the matters that the Debtor was alleging as the basis for reconsideration appeared to be issues more properly considered on an appeal of the Stay Order.

### B. **The Appeal Motion**

The Court hereby grants the Debtor's request for a stay pending appeal of the Stay Order, for the following reasons:

1. The Court believes that reasonable minds and courts could differ as to whether: (a) Dr. Fallone's mere promise to fund the shortfall, even if it was not bonded or collateralized, and even if Dr. Fallone on a balance sheet basis was insolvent, was sufficient for the Debtor to meet

its burden of feasibility and the ability to implement its proffered plan under Sections 362(d) and 1129(a); and (b) this Court should have assumed or determined that the Debtor could obtain the asserted relief from the Foreclosure Judgment's inclusion of the Prepayment Premium.

The issue of a third-party individual's promise to fund a shortfall in plan payments is certainly one of first impression in this Court, and one probably seldom decided, because the few corporate debtors that may have found themselves in similar circumstances would most likely have negotiated a consensual plan, or would have offered a collateralized or bonded third-party promise to fund a payment shortfall when an uncollateralized or unbonded promise was rejected.

As a result, the Court cannot find that there is no reasonable likelihood that the Debtor will succeed on the merits on its appeal of the Stay Order.

2. The Receiver is in place in the State Court Action and is receiving the rents, so the Lender's interests are protected for the short period of time that this Court anticipates that a decision on the appeal of its Stay Order will be issued.

BK. 09-22062

## C. The Alternative Motion for a Second Reconsideration (the "Second Reconsideration Motion")

It is not necessary for the Court to address the Second Reconsideration Motion at this time, since it has granted the Debtor's alternative relief for a stay pending appeal. Nevertheless, the Court would not otherwise even hear the Second Reconsideration Motion because: (i) so many of the alleged reasons for reconsideration are new facts and circumstances that the Debtor has created subsequent to the Court's decision on the Stay Motion, including the funding of an escrow for the payment of taxes, and a repayment agreement with AT&T;[2] and (2) the Debtor has once again failed to demonstrate a basis for reconsideration under Rule 60(b) or Rule 9024.

In filing its series of Motions to Reconsider, it appears that the Debtor has failed to fully understand that the Evidentiary Hearing on the Stay Motion was in fact a final hearing on the Motion and accordingly, it was the time when the Debtor was required to produce all of its evidence regarding feasibility and the implementation of its proffered plan. That Hearing was not

---

[2] In its Second Reconsideration Motion, the Debtor does not cite to any specific section of Rule 9024, but the Court notes that if the Debtor believed that the new facts and circumstances were relevant, then they should have been raised by the Debtor at the Evidentiary Hearing, and these new facts and circumstances are not "newly discovered evidence" under Rule 9024(b)(2) because they could have been raised at the Evidentiary Hearing.

**Page 14**

BK. 09-22062

just a further negotiation with the Court or the Lender in an attempt to arrive at a consensual or otherwise feasible plan.

## CONCLUSION

The Debtor's request for a stay pending the appeal of this Court's Stay Order is in all respects granted.

**IT IS SO ORDERED.**

                                                 /s/
                                    **HON. JOHN C. NINFO, II**
                                    **U.S. BANKRUPTCY JUDGE**

**Dated: February 4, 2010**